Julian Aguon (GU Bar No. 09081)
BLUE OCEAN LAW, P.C.
134 W Soledad Ave., Ste. 400
Hagåtña, GU 96910
Phone: (671) 472-2583
Email: julian@blueoceanlaw.com

Maxx Phillips (HI Bar No. 10032)
*pro hac vice application forthcoming*
CENTER FOR BIOLOGICAL DIVERSITY
1188 Bishop Street, Suite 2412
Honolulu, HI 96813
Phone: (808) 284-0007
Email: mphillips@biologicaldiversity.org

Amy R. Atwood (OR State Bar No. 060407)
*pro hac vice application forthcoming*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Phone: (917) 717-6401
Email: atwood@biologicaldiversity.org

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# OF GUAM

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation,<br><br>    *Plaintiff*,<br><br>      v.<br><br>DEBRA HAALAND, in her official capacity as Secretary of the Interior; | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

U.S. FISH AND WILDLIFE SERVICE,
an agency of the U.S. Department of
Commerce;

    and

MARTHA WILLIAMS, in her official
capacity as the Principal Deputy Director
of the U.S. Fish and Wildlife Service;

    *Defendants.*

## **INTRODUCTION**

1.     In this civil action for declaratory and injunctive relief, Plaintiff Center for Biological Diversity ("the Center") challenges the failure of the Secretary of the Interior and the U.S. Fish and Wildlife Service (collectively, "the Service") to designate critical habitat for fourteen species of plants and nine species of animals in Micronesia, as required under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. The Service's failure to timely designate critical habitat violates its mandatory duty under section 4 of the ESA, 16 U.S.C. § 1533, and deprives these imperiled species of vitally important protections in their most essential habitat areas. Compliance with this mandatory and non-discretionary duty is necessary to ensure the continued survival and eventual recovery of these vulnerable species.

2

2.    On October 1, 2015, the Service determined endangered status for 16 plant and animal species from the Mariana Islands: *Eugenia bryanii*; *Hedyotis megalantha* (pao dedu Ch,[1] pao doodu CI[2]); *Heritiera longipetiolata* (ufa halumtanu Ch, ufa halom tano CI); *Phyllanthus saffordii*; *Psychotria malaspinae* (aplokating palaoan Ch / CI); *Solanum guamense* (Biringenas halumtanu Ch, birengenas halom tano CI); *Tinospora homosepala*; *Emballonura semicaudata rotensis* (Pacific sheath-tailed bat (Mariana subspecies), payeyi Ch, paischeey CI); *Emoia slevini* (Slevin's skink, Marianas Emoia, Marianas skink, gualiik halumtanu Ch, gholuuf CI); *Hypolimnas octocula marianensis* (Mariana eight-spot butterfly, ababbang Ch, Libweibwogh CI); *Vagrans egistina* (Mariana wandering butterfly, ababbang Ch, Libweibwogh CI); *Ischnura luta* (Rota blue damselfly, dulalas Luta Ch, dulalas Luuta CI); *Partula gibba* (humped tree snail, akaleha Ch, denden CI); *Partula langfordi* (Langford's tree snail, akaleha Ch, denden CI); *Partula radiolata* (Guam tree snail, akaleha Ch, denden CI.); and *Samoana fragilis* (fragile tree snail, akaleha dogas Ch, denden CI). 80 Fed. Reg. 59,424, 59,427 (Oct. 1, 2015). The Service also determined threatened status for seven plant species from the Mariana Islands and greater Micronesia in the U.S. Territory of Guam, and the U.S. Commonwealth of the Northern Mariana Islands ("CNMI"): *Bulbophyllum*

---

[1] "Ch" denotes the name of the ESA-listed species in the Chamorro language. 80 Fed. Reg. 59,427 tbl. 1.
[2] "CI" denotes the name of the ESA-listed species in the Carolinian language. *Id.*

3

*guamense* (wild onion siboyas halumtanu Ch, siboyan halom tano CI); *Cycas*

*micronesica* (fadang Ch, faadang CI); *Dendrobium guamense*; *Maesa walkeri*;

*Nervilia jacksoniae*; *Tabernaemontana rotensis*; and *Tuberolabium guamense*. *Id.*

at 59,424.

3.    When the Service lists a species as endangered or threatened, it must

concurrently designate critical habitat for that species, to the greatest extent

prudent and determinable.  16 U.S.C. § 1533(a)(3)(A)(i).  Under limited

circumstances, the Service may extend that deadline to no more than one additional

year.  *Id.* § 1533(b)(6)(C)(ii).

4.    Despite this non-discretionary statutory requirement, to date, the

Service has not designated critical habitat for any of the above listed species, as

required by section 4 of the ESA.

5.    The Service's failure is all the more egregious due to the fact that it

has recognized that these species' habitats are being devasted by "land conversion

by agriculture and urbanization, habitat destruction and modification by nonnative

animals and plants, fire, the potential alteration of environmental conditions

resulting from climate change, and compounded impacts due to the interaction of

these threats."  80 Fed. Reg. 59,460-61.  This habitat destruction, in addition to

other threats, has left these endemic species, which persist in low numbers across

restricted ranges, highly vulnerable and in danger of extinction throughout their entire range. *Id.* at 64,686.

6. The very existence of these 23 imperiled species remains at risk until the Service fulfills its mandatory statutory duties.

7. The Service's failure to timely designate critical habitat for these fourteen species of plants and nine species of animals in Micronesia violates section 4(a) of the ESA, 16 U.S.C. § 1533(a), and alternatively constitutes agency actions unlawfully withheld and unreasonably delayed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Accordingly, the Center brings this action against the Service to (1) secure declaratory relief that the Service is in violation of the ESA for failing to timely designate critical habitat, and (2) compel performance of its mandatory duties to designate critical habitat according to a timeline established by the Court.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & (g) (action arising under the ESA and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 1361 (mandamus).

9.  The relief sought is authorized by 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g) (citizen suit provision of the ESA), and 5 U.S.C. §§ 701-706 (APA).

10.  By written notice sent on August 26, 2019, the Center informed Defendants of their violation more than sixty days prior to the filing of this Complaint, as required by the ESA.  16 U.S.C. § 1540(g)(2).  Despite receipt of the Center's notice letter, the Service has failed to remedy its violation of the ESA.

11.  Venue is proper in the U.S. District Court of Guam pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12.  An actual, justiciable controversy exists between the parties within the meaning of the Declaratory Judgment Act.  28 U.S.C. § 2201.

13.  The Center has no adequate remedy at law.  The Service's continuing failure to comply with the ESA will result in irreparable harm to these fourteen species of plants and nine species of animals in Micronesia, to the Center and the Center's members, and to the public.  No monetary damages or other legal remedies can adequately compensate the Center, its members, or the public for this harm.

14.  The federal government has waived sovereign immunity in this action pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

6

## PARTIES

15.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) conservation organization with more than 84,000 members, including members who reside in the Mariana Islands, including Guam, with a direct interest in the survival and recovery of threatened and endangered species. Through science, policy, and environmental law, the Center is actively involved in species and habitat protection issues throughout the United States and abroad, including efforts related to the Mariana islands' imperiled plant and animal species, and the effective implementation of the ESA. The Center is highly dedicated to conserving fragile and impacted ecosystems and the species that depend on them. The Center's members and staff have researched, studied, observed, and sought protection for these fourteen species of plants and nine species of animals in Micronesia. In addition, the Center's members and staff have visited and enjoyed Micronesia where these 23 species of plants and animals occur, and they have sought out and observed these species in the Mariana Islands and greater Micronesia in the U.S. Territory of Guam, and CNMI. The Center's members and staff have plans to continue to visit and observe, or attempt to observe, these 23 species of plants and animals in the future. The Center's members and staff derive scientific, recreational, cultural, conservation, spiritual, educational, medicinal, and

7

aesthetic benefits from these 23 species of plants and animals' existence in the wild.

16.     For example, one member of the Center, is an indigenous CHamoru woman who serves as a yo'åmte, or traditional healer, in the local community of Guam.  She regularly harvests a variety of plants in order to make åmot, or traditional medicine, from throughout the island, including the Ritidian area.  She visits the areas where these plants are found both alone and with other people, including young cultural apprentices to whom she is passing on her traditional knowledge.  She visits these areas to practice her culture, commune with her ancestors, and enjoy the area's biological and cultural resources.  Being of CHamoru ancestry, this member has a deep spiritual connection to these species and the habitats they depend on to survive.  She plans to continue visiting these species and their habitats on a regular basis for these purposes.  Another member of the Center, is a scientist who has sought out, observed, and researched these plant and animal species.  She is concerned about the pressing need to conserve these species' critical habitat.

17.     The Center's members' and staff's enjoyment of these 23 species of plants and animals is dependent on the continued existence of healthy, sustainable populations in the wild.  The Service's failure to designate critical habitat for these

23 species of plants and animals directly harms these interests. The Center brings

this action on behalf of itself and its adversely affected members.

18.    The Center has worked to protect the wildlife of Mariana Islands and

greater Micronesia in the U.S. Territory of Guam, and CNMI for more than 20

years, including the filing of petitions to the Service to designate species as

threatened and endangered, and to designate critical habitat for listed species,

pursuant to the ESA. These petitions include the Center's May 2004 petition to list

these 23 species of plants and animals.

19.    The Center and its members are adversely affected or aggrieved by

the Service's inaction and are entitled to judicial review of such inaction under the

ESA and the APA. The Service's failure to comply with the ESA's

nondiscretionary deadlines to designate critical habitat for these 23 ESA-listed

species denies these threatened and endangered plants and animals vital protections

that are necessary for their survival and recovery. Without the additional

protections that would be available subsequent to the designation of critical habitat,

these 23 ESA-listed species of plants and animals are more likely to continue to

decline and become extinct. The Center's members and staff are therefore injured

because their use and enjoyment of these 23 ESA-listed species of plants and

animals are threatened by the Service's violations of the ESA. The above-

described cultural, aesthetic, recreational, spiritual, scientific, educational,

9

conservational, medicinal, and other interests of the Center and its members have been, are being, and unless the Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' continued failure to comply with their obligations under the ESA. The relief sought in this case will redress these injuries.

20. The Service's failure to comply with the ESA's deadlines has also resulted in informational and procedural injury to the Center, because the ESA affords the Center procedural and informational rights, including the right to comment on and otherwise participate in the statutorily mandated critical habitat processes triggered by an ESA listing. The Service's failure to timely designate critical habitat frustrates these rights. These are actual, concrete injuries to the Center, caused by the Service's failure to comply with the ESA, its implementing regulations (50 C.F.R. pt. 424), and the APA. The relief requested will fully redress those injuries.

21. Defendant DEBRA HAALAND is the Acting Secretary of the United States Department of the Interior and is the federal official with final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including the timely designation of critical habitat, and for complying with all other federal laws applicable to the Department of the Interior. Acting Secretary Debra Haaland is sued in her official capacity.

10

22.     Defendant U.S. FISH AND WILDLIFE SERVICE is an agency of the United States Government, within and under the jurisdiction of the Department of the Interior.  Through delegation of authority from the Secretary of the Interior, the Service administers and implements the ESA for non-marine wildlife.  50 C.F.R. § 402.01(b).  This authority encompasses timely compliance with the ESA's mandatory deadlines to designate critical habitat.

23.     Defendant MARTHA WILLIAMS is the Principal Deputy Director ("Director") of the U.S. Fish and Wildlife Service and is being sued in her official capacity.  The Director is responsible for the administration and the implementation of the ESA and APA in timely designating the critical habitat of an endangered or threatened species.

## LEGAL BACKGROUND

24.     The Supreme Court has declared that the Endangered Species Act "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  As the Court recognized, "Congress intended endangered species be afforded the highest of priorities."  *Id.* at 174.  Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a

11

program for the conservation of such endangered species and threatened species[.]"
16 U.S.C. § 1531(b).

25.     The ESA defines "conservation" to mean "the use of all methods and
procedures which are necessary to bring any endangered species or threatened
species to the point at which the measures provided pursuant to this Act are no
longer necessary." *Id.* § 1532(3).  Thus, the ultimate goal of the ESA is not only to
temporarily save endangered and threatened species from extinction but to recover
these species to the point where they no longer need ESA protection.

26.     To that end, the ESA requires the Service to protect imperiled species
by listing them as "endangered" or "threatened" when they meet the statutory
listing criteria. *Id.* § 1533(a)(1).  A species is endangered if it "is in danger of
extinction throughout all or a significant portion of its range." *Id.* § 1532(6).  A
species is threatened if it is "is likely to become an endangered species within the
foreseeable future throughout all or a significant portion of its range." *Id.* §
1532(20).

27.     Once a species is listed, it receives a host of important protections
designed to prevent its extinction and aid its recovery, including one of the most
crucial protections — safeguards for its "critical habitat." *Id.* § 1533(a)(3)(A).

28.     Concurrent with listing a species, the ESA requires the designation of
critical habitat.  16 U.S.C. § 1533(a)(3)(A)(i) ("The Secretary . . . shall,

concurrently with making a determination . . . that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat."); *see also id.* § 1533(b)(6)(C).

29.     In limited circumstances, the Service may extend the designation of critical habitat for no more than one year.  If the Secretary finds that critical habitat is "not determinable" at the time of listing, it "may extend the one-year period . . . by not more than one additional year, but not later than the close of such additional year the Secretary must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat." 16 U.S.C. § 1533(b)(6)(C)(ii).

30.     Critical habitat means "the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section [4 of the ESA], on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection;" and unoccupied areas "essential for the conservation of the species."  16 U.S.C. § 1532(5); *see also* 50 C.F.R. § 424.12(b).

31.     Congress recognized the importance of habitat protections to the conservation and recovery of endangered species.  The legislative history of the ESA clearly demonstrates Congress understood the importance of timely critical habitat designation in conserving listed species:

13

> [C]lassifying a species as endangered or threatened is only the first step in insuring its survival. Of equal or more importance is the determination of the habitat necessary for that species' continued existence . . . . If the protection of endangered and threatened species depends in large measure on the preservation of the species' habitat, then *the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat.*

H.R. Rep. No. 94-887 at 3 (1976) (emphasis added).

32.     Time has proven the wisdom of Congress' requirement that the Service designate critical habitat for listed species. Studies demonstrate that species with critical habitat are more than twice as likely to be in recovery than those without it.

33.     The ESA does not safeguard a species' critical habitat until the Service designates it. Therefore, it is imperative that the Service meticulously follow the ESA's procedures and deadlines to ensure it designates critical habitat in a timely manner.

34.     Section 7(a)(1) of the ESA imposes an "affirmative duty" on all federal agencies to conserve listed species. It provides that federal agencies shall "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species[.]" 16 U.S.C. § 1536(a)(1).

35.     Pursuant to section 7(a)(2) of the ESA, federal agencies must ensure through consultation with the Service that any action federal agencies authorize,

14

fund, or carry out will not "jeopardize the continued existence of any [ESA-listed] species." *Id*. at § 1536(a)(2). For species with critical habitat, each federal agency must additionally guarantee that its actions will not "result in the destruction or adverse modification" of that habitat. *Id.*

36.     The ESA's citizen suit provision provides for judicial review where the Service has failed to perform a mandatory duty under ESA section 4. 16 U.S.C. § 1540(g)(1)(C). The APA provides the scope of review for an agency action. 5 U.S.C. § 706(2)(A). Furthermore, under the APA, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

37.     On October 1, 2015, the Service determined endangered status for 16 plant and animal species from the Mariana Islands: *Eugenia bryanii*; *Hedyotis megalantha* (pao dedu Ch, pao doodu CI); *Heritiera longipetiolata* (ufa halumtanu Ch, ufa halom tano CI); *Phyllanthus saffordii*; *Psychotria malaspinae* (aplokating palaoan Ch / CI); *Solanum guamense* (Biringenas halumtanu Ch, birengenas halom tano CI); *Tinospora homosepala*; *Emballonura semicaudata rotensis* (Pacific sheath-tailed bat (Mariana subspecies), payeyi Ch, paischeey CI); *Emoia slevini* (Slevin's skink, Marianas Emoia, Marianas skink, gualiik halumtanu Ch, gholuuf CI); *Hypolimnas octocula marianensis* (Mariana eight-spot butterfly, ababbang Ch,

15

Libweibwogh CI); *Vagrans egistina* (Mariana wandering butterfly, ababbang Ch, Libweibwogh CI); *Ischnura luta* (Rota blue damselfly, dulalas Luta Ch, dulalas Luuta CI); *Partula gibba* (humped tree snail, akaleha Ch, denden CI); *Partula langfordi* (Langford's tree snail, akaleha Ch, denden CI); *Partula radiolata* (Guam tree snail, akaleha Ch, denden CI); and *Samoana fragilis* (fragile tree snail, akaleha dogas Ch, denden CI). 80 Fed. Reg. 59,424, 59,427 (Oct. 1, 2015). The Service also determined threatened status for seven plant species from the Mariana Islands and greater Micronesia in the U.S. Territory of Guam, and CNMI: *Bulbophyllum guamense* (wild onion siboyas halumtanu Ch, siboyan halom tano CI); *Cycas micronesica* (fadang Ch, faadang CI); *Dendrobium guamense*; *Maesa walkeri*; *Nervilia jacksoniae*; *Tabernaemontana rotensis*; and *Tuberolabium guamense*. *Id.* at 59,424. The ESA requires critical habitat designation concurrently with this listing determination, except under limited circumstances. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A); *see also id.* § 1533(b)(6)(C)(i)-(ii).

38.     The Service failed to designate critical habitat concurrently with its October 1, 2015, rule listing these 23 species as endangered and threatened. 80 Fed. Reg. 59,424. Since the Service found critical habitat was not determinable at that time, the Service had until October 1, 2016, to publish final critical habitat designations. *See* 16 U.S.C. § 1533(b)(6)(C)(i-ii). However, the Service has yet to designate critical habitat for any of these 23 Micronesian species.

16

39.     The Service's failure is inexcusable as it has recognized that these "23 Mariana Island species are experiencing population-level impacts" as the result of serious and ongoing threats from habitat loss and degradation due to federal activities, including military activities to test weapons.  80 Fed. Reg. 59,424. These species' habitat is being devasted by development, activities associated with military weapons testing, training and urbanization, nonnative ungulates and plants, brown treesnakes, fire, and climate change.  *Id*. at 59,471.

40.     The threat of habitat destruction is further increased by "[d]irect impacts from ordnance and live-fire from military training, recreational vehicles, and exacerbated vulnerability to threats and, consequently, extinction, due to small numbers of individuals and populations."  *Id*. at 59,424.

41.     This ongoing habitat destruction, in addition to other serious threats, leaves these highly endemic species in danger of extinction throughout all or a significant portion of their range.  *Id*. at 59,471.

42.     The Service's delay in designating critical habitat for these 23 Micronesian species violates its non-discretionary duties under the ESA, deprives these imperiled species of protections to which they are legally entitled, and inexcusably leaves them at increased risk of extinction.

## FIRST CLAIM FOR RELIEF

## Violation of the Service's Nondiscretionary Duties under Section 4 of the Endangered Species Act (ESA Citizen Suit Claim)

### Failure to timely designate critical habitat for 23 Micronesian species

43.     The Center re-alleges and incorporates by reference all allegations set forth in this Complaint, as though fully set forth below.

44.     Under section 4 of the ESA, the Service has a mandatory, non-discretionary duty to designate critical habitat for 23 Micronesian species concurrently with its listing decision. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C). Under limited circumstances, the Service may extend that deadline to no more than one additional year.  *Id.* § 1533 § (b)(6)(A)(ii), (C)(ii).

45.     To date, the Service has failed to designate critical habitat for these 23 Micronesian species.  The Service has not proposed or finalized the designation of critical habitat for these 23 Micronesian species.

46.     The Service's failure to timely designate critical habitat for these 23 Micronesian species violates section 4 of the ESA. 16 U.S.C. § 1533.

18

## SECOND CLAIM FOR RELIEF

## Violation of the Administrative Procedure Act
## (In the Alternative to Plaintiffs' First Claim for Relief)

### Agency Action Unlawfully Delayed or Unreasonably Withheld Under APA, 5 U.S.C. § 706(1)

47.     The Center re-alleges and incorporates by reference all allegations set forth in this Complaint, as though fully set forth below.

48.     Under the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

49.     Timely designation of critical habitat for these 23 Micronesian species constitutes a mandatory, non-discretionary action the Service was required to perform pursuant to 16 U.S.C. § 1533(a).

50.     The Service's continued failure to timely designate critical habitat for these 23 Micronesian species violates the ESA, 16 U.S.C. § 1533, and constitutes an agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

19

## <u>REQUEST FOR RELIEF</u>

The Center respectfully requests that the Court grant the following relief:

1.    Declare that the Service is in violation of section 4(a) of the ESA by
failing to timely designate critical habitat for each of the 23
Micronesian species, 16 U.S.C. § 1533(a).  In the alternative, declare
that the Service unlawfully withheld or unreasonably delayed within
the meaning of the APA, 5 U.S.C. § 706(1), the timely designation of
critical habitat;

2.    Order the Service to propose and finalize critical habitat rules for
these 23 Micronesian species by dates certain;

4.    Award the Center its reasonable fees, costs, and expenses associated
with this litigation pursuant to 16 U.S.C. § 1540(g)(4), or the Equal
Access to Justice Act, 28 U.S.C. § 2412(d); and

4.    Grant such other and further relief as the Court deems just and proper
to remedy the Service's violations of law.


DATE:  July 20, 2021

                                      Respectfully Submitted,

                                      */s/ Julian Aguon*
                                      Julian Aguon (GU Bar No. 09081)
                                      BLUE OCEAN LAW, P.C.
                                      134 W Soledad Ave., Ste. 400
                                      Hagåtña, GU 96910
                                      Phone: (671) 472-2583

Email: julian@blueoceanlaw.com

Maxx Phillips (HI Bar No. 10032)
*pro hac vice application forthcoming*
CENTER FOR BIOLOGICAL DIVERSITY
1188 Bishop Street, Suite 2412
Honolulu, HI 96813
Phone: (808) 284-0007
Email: mphillips@biologicaldiversity.org

Amy R. Atwood (OR Bar No. 060407)
*pro hac vice application forthcoming*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Phone: (917) 717-6401
Email: atwood@biologicaldiversity.org

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2021, I filed the foregoing Complaint using the Court's ECF system, which will cause this filing to be served on counsel of record for Defendants.


DATE: July 20, 2021                    */s/ Julian Aguon*
                                       Julian Aguon